# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

EMSAT ADVANCED GEO-LOCATION
TECHNOLOGY, LLC and LOCATION
BASED SERVICES LLC,

        Plaintiffs,

    v.

AT&T MOBILITY LLC, TRACFONE
WIRELESS, INC., T-MOBILE USA, INC.,
and GOOGLE, INC.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action Nos. 4:08 CV 00817; 4:08 CV
00822

JUDGE JOHN R. ADAMS


## PLAINTIFFS' RESPONSE TO ALL DEFENDANTS' OPENING

## CLAIM CONSTRUCTION BRIEFS

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ iv

I.       INTRODUCTION .........................................................................................1

II.      CLAIM TERMS IN DISPUTE.....................................................................2

A.       "Exact Geographic Location" ......................................................................2

         1.       The Meaning Of "Exact Geographic Location" Is Easily
                  Understood By A Person Of Ordinary Skill In The Art Based On
                  The Prosecution History Of The '633 Patent..............................................4

         2.       The Patentees' Arguments During Prosecution Of The '633 Patent
                  Do Not Preclude The Invention From Using Signal Strength Or
                  Cell Site Location So Long As The Invention Obtains The Exact
                  Geographic Location Of The Mobile Unit....................................................6

         3.       The Patentees Did Not Contradict Themselves On What Is
                  Required For An "Exact Geographic Location."............................................7

         4.       Defendants' Negative Limitations Are Improper And Indefinite...............8

B.       As Used In The Claims, "Subsequent Services" Are Provided During A
         Call In Progress.......................................................................................10

         1.       "Subsequent Services" Refers To Services That Are Provided
                  During A Call In Progress After Location Has Been Obtained, Not
                  After The Communication Process Between The Mobile Unit And
                  The Network Has Ended. .........................................................................10

         2.       This Court Should Adopt The Construction Of "Subsequent
                  Services" Applied By The USPTO.............................................................12

         3.       There Is No Basis To Limit "Services" To "Subscriber Services."...........14

C.       "Override Criteria".....................................................................................15

         1.       The Common Meaning Of "Criteria" Is Singular......................................15

         2.       Defendants' Improperly Read Limitations Into The Term
                  "Override.".................................................................................................16

         3.       Defendants Ignore The Language Of Claim 9 And Improperly
                  Read "Exact Geographic Location" Into The Construction Of
                  "Override Criteria."...................................................................................17

ii

D.        A "Service Provider" Is Clear And Unambiguous, And Therefore Does Not Require Construction ........................................................................19

      1.    Those Skilled In The Telecommunications Art Understand The Ordinary Meaning Of "Service Provider." .................................................19

      2.    The Term "Service Provider" Is Used In The Specification And Claims To Refer To Emergency Services, Thereby Establishing That "Service Provider" Is Not Limited To A Wireless Communications Service. ........................................................................20

E.        "A Specific Service Provider" Refers To The Service Requested By The User. ..........................................................................................................21

F.        "Location-Based Service" ......................................................................22

      1.    The Language Of Claim 23 Makes Defendants' Proposed Construction Redundant And Therefore Improper. ...............................23

      2.    The Specification And Prosecution History Of The '763 Patent Support Plaintiffs' Construction Of "Location-Based Service." ..............23

      3.    Google's Proposed Construction Is Unduly Narrow And Not Required By The Claims, The Specification, Or The Prosecution History ..............................................................................................27

           (a) The Specification Does Not Limit "Location-Based Service" To Only Call Management Decisions. .................................................27

           (b) The Prosecution History Does Not Limit "Location-Based Service" To Call Management Decisions. .....................................28

G.        The "Inaccuracy" Recited In Claim 1 Of The '763 Patent Is Not Limited To Distance. ..........................................................................................29

H.        "In Response Thereto" ..........................................................................31

I.         "Unique Mobile Identification Number" ................................................32

J.         The Order of Steps for Claim 1 of the '611 Patent .................................33

K.        "Triangulation" .....................................................................................34

III.     CONCLUSION ...............................................................................................37

CERTIFICATE OF SERVICE ........................................................................................39

iii

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Labs. v. Baxter Pharm. Prods., Inc.*,
   334 F.3d 1274 (Fed. Cir. 2003)................................................................................15

*Agilent Tech., Inc. v. Affymetrix, Inc.*,
   567 F.3d 1366 (Fed. Cir. 2009)................................................................................23

*Amgen, Inc. v. Hoechst Marion Roussel Inc.*,
   314 F.3d 1313 (Fed. Cir. 2003) ......................................................................... 9, 29

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*,
   320 F.3d 1339 (Fed. Cir. 2003)................................................................................13

*Boler Corp. v. Neway Anchorlok Int'l, Inc.*,
   92 F. Supp. 2d 671 (N.D. Ohio 2000)....................................................................30

*Computer Docking Station Corp. v. Dell, Inc.*,
   519 F.3d 1366 (Fed. Cir. 2008)..................................................................................9

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*,
   64 F.3d 1553 (Fed. Cir. 1995)..................................................................................13

*Freescale Semiconductor, Inc. v. Promos Tech., Inc.*,
   561 F.Supp. 2d 732 (E.D. Ill. 2008)..........................................................................3

*FRID Tracker, Ltd. v. Wal-Mart Stores, Inc.*,
   342 Fed. Appx. 628 (Fed. Cir. 2009)........................................................................9

*Geneva Pharm., Inc. v. GlaxoSmithKline PLC*,
   349 F.3d 1373 (Fed. Cir. 2003)..................................................................................9

*Harris Corp. v. Ixys Corp.*,
   114 F.3d 1149 (Fed. Cir. 1997)................................................................................15

*In re Driscoll*,
   562 F.2d 1245 (CCPA, 1977) ..................................................................................15

*Innova/Pure Water Inc. v. Safari Water Filt. Sys. Inc.*,
   381 F.3d 1111 (Fed. Cir. 2004)................................................................................27

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
   358 F.3d 898 (Fed. Cir. 2004) ........................................................................... 9, 29

*Mangosoft, Inc. v. Oracle Corp.*,
    525 F.3d 1327 (Fed. Cir. 2008)...................................................................................23

*Mannatech, Inc. v. Glycobiotics Int'l, Inc.*,
    2007 U.S. Dist. LEXIS 91946 (N.D. Tex. 2007)........................................................3

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996)..................................17, 18

*Merck & Co. v. Teva Pharms. USA, Inc.*,
    395 F.3d 1364 (Fed. Cir. 2005)..............................................................................18, 23

*NCube Corp. v. Seachange Int'l, Inc.*,
    436 F.3d 1317 (Fed. Cir. 2006)...................................................................................19

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008)..............................................................................31, 34

*Orian IP, LLC v. Staples, Inc.*,
    406 F.Supp.2d 717 (E.D. Tex. 2005) ...........................................................................1

*Paragon Solutions, LLC v. Timex Corp.*,
    566 F.3d 1075 (Fed. Cir. 2009)...................................................................................19

*Power-One, Inc. v. Artesyn Tech., Inc.*,
    2007 U.S. Dist. LEXIS 20458 (E.D. Tex. 2007) .........................................................4

*SRAM Corp. v. AD-II Eng'g, Inc.*,
    465 F.3d 1351 (Fed Cir. 2006)....................................................................................18

*U.S. Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997)...................................................................................34

*Wireless Agents, L.L.C. v. Sony Ericsson Mobile Commc'ns AB*,
    2007 U.S. Dist. LEXIS 6888 (N.D. Tex. 2007).............................................................3

## STATUTES

35 U.S.C. § 112...........................................................................................................30

37 C.F.R. § 1.72(b) .....................................................................................................28

## OTHER AUTHORITIES

American Heritage® Dictionary of the English Language, Fourth Edition .................36

Merriam-Webster Online Dictionary. 2010................................................................15

Newton's Telecom Dictionary, 23rd Edition (2007) ..................................................19

http://dictionary.reference.com/browse/Triangulation ................................................................36

*Meeting Held to Promote Uniform Practice In Chemical Divisions*,
    28 J. Pat. & Trademark Off. Soc'y 849 (1946) ......................................................15

Plaintiffs Emsat Advanced Geo-Location Technology, LLC ("EMSAT") and Location Based Services LLC ("LBS") hereby submit their Response to Defendants' collective Opening Claim Construction Briefs.[1]  Although Google filed a separate opening claim construction brief it argues separate constructions only for "location-based service" and "subsequent services." Therefore, Plaintiffs address Google's arguments in this brief while addressing the same claim constructions asserted by the other Defendants.

## I.     INTRODUCTION

The claim construction issues before the Court are relatively simple despite Defendants' best efforts to overcomplicate and obfuscate them.  This is best exemplified by Defendants' criticism that for many terms Plaintiffs "do not offer any construction at all," which makes no sense and is not required by law.  *Orian IP, LLC v. Staples, Inc.*, 406 F.Supp.2d 717, 737-38 (E.D. Tex. 2005) ("although every word used in a claim has a meaning, not every word requires a construction.").

Defendants repeated insinuation that there is something wrong with Plaintiffs bringing this action based on a family of patents, including "much-later" filed patent applications to the family's originally filed application is wrong and hypocritical.  The only relevant issue stemming from the profile of Plaintiffs' lawsuit is whether the asserted claims are entitled to the 1991 filing date of the '633 patent.

As discussed at length, *infra*, all of Plaintiffs' asserted claims are fully supported by their 1991 disclosure.  Plaintiffs have supported each and every one of its claim constructions using the originally filed 1991 specification from the '633 patent.  The later-filed applications that

---

[1]  All additional exhibits referenced in this Brief are authenticated in the Declaration of R. Eric Gaum in Support of Plaintiffs' Response To Defendants' Opening Claim Construction Brief ("Gaum Dec."), Ex. 29.  Exhibit numbering will continue from where it ended in Plaintiffs' Opening Claim Construction Brief.

added "matter," but very little of it was "new matter."  And any "new matter" is reflected in claims that Plaintiffs are <u>not</u> asserting, making it irrelevant.  With regard to the claims at issue, any "matter" that was added to the later-filed applications just elaborated on inventive concepts already adequately disclosed in the 1991 specification.

## II.     CLAIM TERMS IN DISPUTE

### A.     "Exact Geographic Location"

The parties agree that a position determining system must provide a position for the mobile unit in latitude and longitude.  (See Ex. 1).  Only a position in latitude and longitude can be an "exact geographic location."  As to how precise and accurate the position must be, Plaintiffs' construction provides an objective standard that a person of ordinary skill in the art in would clearly understand.  Such a person of skill in the art, i.e., someone with both cellular and position determining systems experience, would instantly know the "degree of accuracy and precision typical of that obtained from a Global Positioning System (GPS), LORAN, or other position determining system."  (Declaration of Richard A. Chandler ("Chandler Decl.") ¶¶ 28-29).[2]  Reference to latitude and longitude position determining systems commonly used with cellular technology provides such an objective standard.  (*Id.*)

It is Defendants' proposed construction that fails to provide an objective standard.  Their proposed construction simply recites "a precise and accurate position" without any reference that a person of ordinary skill could apply.  If "precise and accurate" is enough to be objective, as proposed in Defendants' construction, then tying the "accuracy and precision" to position

---

[2] Both this brief and Plaintiffs' yet to be filed opposition to Defendants' motion for summary judgment cite to a declaration of Richard A. Chandler.  To avoid duplicative submissions, Plaintiffs are filing Mr. Chandler's Declaration and all related exhibits separately.  All citations to Mr. Chandler's Declaration in this claim construction brief and in the opposition to Defendants' motion for summary judgment are to "Chandler Decl."

determining systems used in the cellular industry, as proposed by Plaintiffs' construction, must surely be objective and definite.

Defendants also spend a tremendous amount of their opening brief arguing their co-pending motion for summary judgment, i.e., that the phrase "exact geographic location" is indefinite. The Court should ignore these arguments here for two reasons: (1) they are already presented by separate motion and (2) the fact that Defendants were able to propose an alternate construction establishes that "exact geographic location" can be construed.

During claim construction, Defendants should be arguing their proposed construction of "exact geographic location," i.e., "a precise and accurate position in latitude and longitude that is not determined using cell site location, cell site ID, coverage area, signal strength, two-way ranging, or hyperbolic ranging." [3] (Exs. 7-9). Because Defendants were able and provided an alternative construction for "exact geographic location," the phrase is clearly not indefinite. *Mannatech, Inc. v. Glycobiotics Int'l, Inc.*, 2007 U.S. Dist. LEXIS 91946, at *20 (N.D. Tex. 2007) ("fact that defendant proffered a proposed construction of this claim term undermines its argument that the term is 'insolubly ambiguous' and not amenable to construction"); *Wireless Agents, L.L.C. v. Sony Ericsson Mobile Commc'ns AB*, 2007 U.S. Dist. LEXIS 6888, at *10 (N.D. Tex. 2007) ("Because Sony has proffered a construction of the term, it is not indefinite."); *Freescale Semiconductor, Inc. v. Promos Tech., Inc.*, 561 F.Supp. 2d 732, 742 (E.D. Ill. 2008) ("Indeed, its alternate proposed construction reveals that there is at least some possible construction that would prevent a finding that this claim term is 'insolubly ambiguous.'");

---

[3] On March 31, 2010 Defendants notified Emsat that the table on page 8 of their brief, which included their proposed construction for "exact geographic location," contained several errors. The table should have recited the following construction: "indefinite (or alternatively, a precise and accurate position in latitude and longitude that is not determined using cell site location, cell site ID, coverage area, signal strength, two-way ranging, or hyperbolic ranging)." The Table on page 8 of Defendants' brief mistakenly left out "cell site location" and mistakenly included "trilateration" at the end.

*Power-One, Inc. v. Artesyn Tech., Inc.*, 2007 U.S. Dist. LEXIS 20458, at *17 (E.D. Tex. 2007) ("First, Artesyn initially proposed a construction of 'POL regulator' indicating that the meaning of this term can be discerned.").

> **1.  The Meaning Of "Exact Geographic Location" Is Easily Understood By A Person Of Ordinary Skill In The Art Based On The Prosecution History Of The '633 Patent.**

The word "exact" was added to modify "geographic location" in the claims of the '633 patent, the earliest filed patent in the family, in order to distinguish over two prior art references: U.S. Patent No. 4,229,620 to Schaible and U.S. Patent No. 5,054,110 to Comroe.  (Exs. 18 and 19, respectively.)  These are the only two prior art references from the prosecution history of the '633 patent, or any of the related patents-in-suit, that are directly relevant to the proper construction of "exact geographic location."

In response to a Non-Final Office Action, the Patentees made a number of amendments to the independent claims.  One amendment was to add "exact" to "geographic location."  (Ex. 20, October 8, 1992 Response, App. Ser. No. 07/813,494 (the '633 patent), at 1-3.)  The Patentees went on to explain why the addition of "exact" to "geographic location" distinguished their invention of the prior art cited by the Examiner.

First, the Patentees explained that the Schaible patent was cited by the Examiner "as teaching the desirability of maintaining <u>some indication of the location of the mobile unit</u> for hand-offs."  (Ex. 20 at 6) (emphasis added).  The Patentees further argued that "[t]he Schaible patent expressly states, in column 10, lines 55 *et seq.*, that mobile unit location is determined using ***SIGNAL STRENGTH.***  Still further, this patent uses signal strength as an *indication* of location."  (Ex. 20 at 6) (emphasis in original).  The Patentees then state that "[t]here is no disclosure in [Schaible] of the means and/or method of matching <u>exact geographic location</u> of the

4

mobile unit to stored cell site geographic locations to make call management decisions." (Ex. 20 at 6) (emphasis added).

The Schaible patent does not teach determining the "exact geographic location" of the mobile unit. (Chandler Decl. ¶ 43). All that Schaible teaches is that a received signal is processed "to determine approximately the distance from the station which had provided the received signal." (Ex. 18, U.S. Patent No. 4,229,620 to Schaible, col. 2, ln. 44-49.) (emphasis added). Both Plaintiffs and Defendants agree that an "exact geographic location" is a position in latitude and longitude. (See Ex. 1). The two-way ranging system of Schaible only provides a distance, which could be in any direction from the cell tower receiving the signal, based on the signal's strength. (Chandler Decl. ¶¶ 46-47). All that Schaible teaches is measuring the distance of a mobile unit from a cell site based only on signal strength to "show whether or not the mobile unit is about to pass into a different cell." (Ex. 18, col. 10, ln. 64-68). Schaible never obtains the exact geographic location of the mobile unit. (Chandler Decl. ¶ 43). All it does is determine the mobile unit's approximate distance from the known location of a cell site. Distance alone is not a "position in latitude and longitude," as of the parties agree is required by an "exact geographic location."

The Patentees also distinguished U.S. Patent No. 5,054,110 to Comroe, et al., because in Comroe the "mobile unit never indicates what its exact geographic location is, only that it is near a particular cell site." (Ex. 20 at 8) (emphasis added). Again, similar to the disclosure of Schaible, Comroe does not teach an "exact geographic location" of a mobile unit. (Chandler Decl. ¶ 50). Instead, it simply correlates the mobile unit with the last cell site that the mobile unit registered with. In other words, Comroe teaches getting the cell site's location and then using that as an estimate of where the mobile unit is.

5

What the Patentees were arguing is that systems that use <u>only</u> signal strength or use <u>only</u> cell site location are not determining the location of the mobile unit, i.e., they are not position-determining systems at all.  Instead, they are methods of looking up the locations of cell sites and then guessing the location of the mobile unit based on signal strength or the last cell site the mobile unit was registered with.  Neither of these methods by themselves provide an "exact geographic location" of the mobile unit, which is central to the inventions of the patents in suit.

Neither Schaible (signal strength) nor Comroe (cell site location) teach obtaining an "exact geographic location" of the mobile unit.  These estimates based on the strength of a signal from a cell site or the location of a cell site are not "exact geographic locations" of mobile units.  Neither provides a position in latitude and longitude of the mobile unit itself.

>2. **The Patentees' Arguments During Prosecution Of The '633 Patent Do Not Preclude The Invention From Using Signal Strength Or Cell Site Location So Long As The Invention Obtains The Exact Geographic Location Of The Mobile Unit.**

Defendants argue that statements made by the Patentees during prosecution of the '633 patent exclude certain position-determining systems.  (Defendants' Joint Mem. at 13.)  This is incorrect for several reasons.  First, none of the prior art that the Patentees distinguished during prosecution (Schaible and Comroe discussed *supra*) disclose position-determining systems.  The parties agree that a position determining system must provide a position in latitude and longitude for the mobile unit, neither Schaible nor Comroe disclose such a system.

Second, the prosecution history of the '633 patent expressly states that signal strength and cell site location, among other prior art methods, can be used as factors, although not by themselves, to make call management decisions.  For example, when distinguishing U.S. Patent No. 5,043,736 to Darnell, the Patentee stated:

>The Darnell patent is cited for its disclosure of a cellular system in combination with a satellite system.  Again, applicants are not claiming to have invented a

6

system that uses a satellite system *per se*, but are claiming <u>to have invented a</u> <u>system that makes call management decisions using, as one factor, the exact</u> <u>geographic location of a mobile unit</u> as determined using a satellite system.

(Ex. 20, at 6) (emphasis added).

The claimed invention can use signal strength, cell site locations, and a myriad of other factors to make call management decisions as long as one of the factors is the "exact geographic location" of the mobile unit.

> ### 3.     The Patentees Did Not Contradict Themselves On What Is Required For An "Exact Geographic Location."

Contrary to Defendants' argument, the Patentees did not contradict themselves in the '404 patent.  According to Defendants, the Patentees "stated in the 1996 Application that *signal strength is a method for determining an exact geographic location*."  (Defendants' Joint Mem. at 10) (emphasis in original).  For obvious reasons, Defendants ignore the fact that the portion of the specification they cite relates only to the registration process.  (Ex. 3, '404 Patent, col. 11, ln. 20-25) ("The first step in the registration process . . .").  The registration process is when a cell phone first powers up and gains access to a cellular network.  (Ex. 3, '404 Patent, col. 11, ln. 18-20).  According to the specification of the '633 patent the mobile unit:

> . . . <u>initially locks onto the cell site that has the strongest signal.</u>  This cell site may not be the most appropriate cell site for use by that mobile unit, but it serves as an [sic] entrèy into the system.  <u>Once this initial communication is established, the</u> <u>mobile unit uses the GPS receiver 24 and GPS satellite 22 [sic] and to determine</u> <u>its exact longitude and latitude</u>.

(Ex. 6, '633 Patent, col. 6, ln. 20-30.) (emphasis added)

Signal strength is only used during the registration process, i.e., the initial communication with a cell site and network.  Once the registration process is complete, the GPS or other location determining system obtains the "exact geographic location."  The Patentees also disclosed that signal strength could be used in making communication process management decisions if the

mobile unit were to move into a prior art cellular system, i.e., one that could not support the use of "exact geographic location."   (Ex. 3, '404 Patent, col. 10, ln. 1-4).   Otherwise, they have always clearly stated, both in the patents and during prosecution, that signal strength is not a position determining system capable of determining latitude and longitude, as all parties agree is required by the correct construction of "exact geographic location."

### 4. Defendants' Negative Limitations Are Improper And Indefinite.

The negative limitations proposed by Defendants, i.e., that the exact geographic location "is not determined using cell site locations, cell site ID, coverage area, signal strength, two-way ranging, or hyperbolic ranging" are improper and indefinite.  In every one of the claims at issue the "exact geographic location" is that of the mobile unit.  In other words, it is the latitude and longitude of the mobile unit.

The prior art Schaible and Comroe patents disclosed methods that were used to estimate the location of the mobile unit based on signal strength or cell site location but none provided the latitude and longitude of the mobile unit.  Signal strength or cell site location, by themselves, can no more provide the latitude and longitude of the mobile unit then can a feather, a bus, or a comb.

Defendants' proposed negative limitations are improper because the requirement that an "exact geographic location" be "a position in latitude and longitude" already, by definition, excludes the methods the Patentees distinguished over during prosecution.  For example, signal strength <u>alone</u> cannot provide the latitude and longitude of the mobile unit, therefore signal strength when used <u>by itself</u> is already excluded from the meaning of "exact geographic location."

Furthermore, Defendants' proposed negative limitations are improper because the Patentees did not make "clear and unmistakable disavowal[s]" of claim scope during

8

prosecution.  *Computer Docking Station Corp. v. Dell, Inc.,* 519 F.3d 1366, 1374 (Fed. Cir. 2008) ("A patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution.") (emphasis added).  "If the applicant unequivocally disavows claim scope, the doctrine of prosecution disclaimer applies even if the disclaimer results in a negative claim limitation."  *FRID Tracker, Ltd. v. Wal-Mart Stores, Inc.*, 342 Fed. Appx. 628, 630 (Fed. Cir. 2009 – nonprecedential) (emphasis added).  However, anything less than a clear and unmistakable disavowal of claim scope by the Patentee is insufficient.  *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (the claims of a patent "will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction'");  *Amgen, Inc. v. Hoechst Marion Roussel Inc*., 314 F.3d 1313, 1327 (Fed. Cir. 2003) ("the prosecution history may not be used to infer the intentional narrowing of a claim absent the applicant's clear disavowal of claim coverage").

As set forth above and in Defendants' brief, the only "clear and unmistakable disavowals" of claim scope during prosecution were to using only signal strength as an estimate of location (Schaible) and using only cell site location as an estimate of location (Comroe). (Defendants' Joint Mem. at 14-15).  While any negative limitation at all is unnecessary, the Patentees never discussed, let alone made a "clear and unmistakable disavowal" related to any of Defendants' proposed negative limitations except "only signal strength" and "only cell site location."

In addition, Defendants' proposed negative limitations are themselves indefinite and therefore improper.  A claim is definite if it permits one of ordinary skill in the art to understand when a claim is infringed.  *Geneva Pharm., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384

9

(Fed. Cir. 2003).  Defendants' proposed construction is indefinite because a person of ordinary skill in the art would not know that signal strength or cell site location are only proper when they are each the <u>only</u> method used to estimate the location of the mobile unit.

In other words, the Defendants' proposed negative limitations should say "latitude and longitude that is not determined" using <u>only</u> signal strength or <u>only</u> cell site location."  Without this clarification, any of the proposed negative limitations are indefinite because a person of ordinary skill in the art would not understand the proper scope of the claim.  A proposed claim construction that is indefinite is no more proper than an indefinite claim, making Defendants' proposed negative limitations improper.

**B.      As Used In The Claims, "Subsequent Services" Are Provided During A Call In Progress.**

**1.      "Subsequent Services" Refers To Services That Are Provided During A Call In Progress After Location Has Been Obtained, Not After The Communication Process Between The Mobile Unit And The Network Has Ended.**

Based on a cherry-picked analysis of the specification of the '822 patent, Defendants contend that "subsequent services" are "subscriber services occurring <u>after</u> the communication process between the network and the specific mobile unit has ended."  (Defendants' Joint Mem. at 26.) (emphasis added).  What is remarkable about Defendants' proposed construction is that it is essentially opposite of the specification, the prosecution history and, perhaps most importantly, the construction recently applied by the USPTO in pending *inter partes* reexamination proceedings.

A good starting point to analyze when the "subsequent services" take place as claimed in the patents is the prosecution history of the '822 patent, as that is the first patent to use the phrase in a claim.  Specifically, the inventors added the "subsequent services" claims in an amendment dated December 29, 2003.  The inventors summarized the amended claims as follows:

> Applicant is adding, by this paper, new claims 75-102 directed to obtaining exact geographic location for a mobile unit that communicates with a cellular network via a cell site chosen without use of exact geographic location, e.g., based upon traditional methods such as signal strength. <u>This permits subsequent use of that exact geographic location</u> for purposes such as provisioning emergency services, rate, message unit, tax, billing, location or other proper services <u>on calls already in progress</u>.

(Ex. 21, 12/29/2003 Amendment at 15) (emphasis added).

Thus, based on the inventors' clear and unambiguous statements in the prosecution history, a person skilled in the art would understand that the phrase "subsequent services" refers to services that are provided after exact geographic location has been obtained, and during a call in progress.

Indeed, a review of the recent decision issued by the USPTO granting *inter partes* reexamination of the '822 patent, on which Google relies in its brief (*see* Google's Mem. at 11-12), confirms that a person skilled in the art would so understand the meaning of "subsequent services." In that decision, the Examiner actually construed "subsequent services:"

> Patent Owner's statement in adding [subsequent services] to the claims, notably in remarks dated 12/29/2003 during the original prosecution, stated that that in adding the "subsequent services" limitation the claimed invention as amended "permits subsequent use" of the geographic location for "purposes such as provisioning emergency services, rate, message unit, tax, billing, location or other proper services on calls already in progress," see p. 15 of 12/29/2003 Remarks. This statement appears to be the only use of the term 'subsequent' in the file history.
>
> <u>This term leads the Examiner towards properly interpreting the term in light of the teachings of the specification.</u> Claim 21 further limits claim 10, disclosing that the location is accessible for emergency services provisioning, and claim 22 further limits claim 10 such that the location is accessible for "rate, message unit, tax, billing or location services provisioning". <u>These recitations parallel those listed in Patent Owner's statement of 12/29/2003</u> and as such the Examiner asserts that for the purposes of this proceeding, barring any further definition of the term or amendment, to that end, for claims 21 and 22 to properly further limit claim 10 the "subsequent services" of claim 10 rightly means those features disclosed in the instant specification affected during calls in progress . . .

(Ex. 22 at 10-11) (emphasis added).

****

> Thus the broadest reasonable interpretation of the <u>"subsequent services" of e.g.</u> <u>claim 10 is properly construed by the Office as services occurring during a call in</u> <u>progress, including emergency 911, taxes, CP rating, message unit, customer</u> <u>service frequency selection, changing frequencies, changing cell site (handover)</u> <u>and changing cell system</u>. This is consistent with the specification as well as Patent Owner's own statement of "subsequent" use of the location as occurring during a call in progress and the level of knowledge of one of ordinary skill in the art, who would appreciate that "subsequent" would imply such in the same manner as stated on the record by Patent Owner.

> (*Id*. at 13) (emphasis added).[4]

As set forth in the USPTO's decision, its construction of "subsequent services" to refer to a call in progress is supported in the specification of the '822 patent. (Chandler Decl. ¶ 68). For example, as the USPTO relied on in its construction (*see* Ex. 22 at 11), the left-hand branch of Figure 8 of the '822 patent describes "online" services (i.e., during the call), including emergency services, being provided to the mobile unit after exact geographic location has been determined and recorded. Figure 9B of the '822 patent also describes emergency services being provided to the caller during the call and after exact geographic location is determined and recorded. Further, as pointed out in Plaintiffs' opening claim construction brief, the specification of the '633 patent, from which all patents in this case claim priority, describes services that are provided during a call in progress after the mobile unit's exact geographic location has been determined and recorded. (*See* Plaintiffs' Mem. at 13-14.)

> ## 2.      This Court Should Adopt The Construction Of "Subsequent Services" Applied By The USPTO.

In analyzing Defendants' proposed construction of "subsequent services" in light of the patents, their prosecution histories and, particularly, the USPTO's recent construction, it has

---

[4] Google cites this passage as support for its argument that "subsequent services" is limited to "call management decisions, such as billing and taxing." (*See* Google's Mem. at 10-11.) Google conveniently fails to note that the passage explicitly refers to "Emergency 911" as one of the examples of subsequent services.

become apparent that the parties' use of "communication process" in their proposed constructions is both confusing and unnecessary.  For their part, Plaintiffs were attempting to provide a construction limiting the claimed services to those that take place <u>after</u> the mobile unit's exact geographic location <u>is determined and recorded</u>.  (Chandler Decl. ¶ 61). However, in light of the fact that one form of "communication process" as described in the patent can be a telephone call, as opposed to the process by which the mobile unit's location is determined, the use of that phrase can lead to confusion.  (Chandler Decl. ¶ 67).  The USPTO's construction, based directly on the prosecution history of the '822 patent, avoids any such potential for confusion.  (*Id.*)

In claim construction, the Court's duty, of course, is to properly construe the claims for application by the jury, rather than adopt the constructions proposed by one of the parties.  *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1556 (Fed. Cir. 1995) ("the judge's task is not to decide which of the adversaries is correct.  Instead the judge must independently assess the claims, the specification, and if necessary the prosecution history, and relevant extrinsic evidence, and declare the meaning of the claims."); *see also Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1347 (Fed. Cir. 2003) ("We conclude that the district court again correctly chose the middle ground between the parties' [claim construction] contentions.")  The fact that Plaintiffs acknowledge their originally proposed construction, while technically correct, can lead to confusion is no reason to adopt Defendants' incorrect proposed construction.  The USPTO's construction provides compelling evidence of how a person of

ordinary skill in the art at the time of the invention would understand "subsequent services" as used in the claims and should be adopted here.[5]

Accordingly, as set forth above, Plaintiff's submit that this Court should construe "subsequent services" as: "**Services occurring during a call in progress, including emergency 911, taxes, CP rating, message unit, customer service frequency selection, changing frequencies, changing cell site (handover) and changing cell system.**"  (Ex. 22 at 13.)

### 3.    There Is No Basis To Limit "Services" To "Subscriber Services."

In an obvious (yet undeclared) effort to create a non-infringement defense, Defendants also argue that the services encompassed within the term "subsequent services" should be "limited to services provided to a cellular subscriber or caller."  (Defendants' Joint Mem. at 31.) The two bases for Defendants' argument are without merit.  First, Defendants argue that the term "service" is too broad to be useful in defining the scope of an invention.  (*Id*.)  But each independent claim of the patents at issue that uses the phrase "subsequent services" describes a cellular communications system or a method of using such a system.  (*See* claims 10, 24, 34-37 of the '822 patent and claim 23 of the '763 patent.)  Adopting the USPTO's construction would make that even clearer.  There is no need for further definition to root "subsequent services" to a cellular communications network and Defendants have provided this Court with no authority so suggesting.

Second, Defendants' reliance on the use of "post communication process subscriber services" as described in the right-hand branch of Figure 8 of the '822 patent is irrelevant.  As established above, there is no basis to limit "subsequent services" to "offline uses" – indeed, the

---

[5] For the same reasons, this Court should reject Google's effort to limit the term "subsequent services" to specific types of services.  (*See* Google's Mem. at 19-20.)  That proposed construction is not only inconsistent with the specifications of both patents at issue here as well as the original '633 patent, all of which specifically identify emergency services as *examples* of subsequent services, but also the USPTO's recent construction, which contains no such limitation.

USPTO did not even refer to the right-hand branch in connection with its construction of "subsequent services."  The Federal Circuit has cautioned courts from positing constructions that "contribute nothing but meaningless verbiage to the definition of the claimed invention."  *Harris Corp. v. Ixys Corp.*, 114 F.3d 1149, 1152 (Fed. Cir. 1997).   There is no need for the Court to add the word "subscriber" to services: Defendants are simply trying to add claim limitations to create an undisclosed non-infringement defense.

### C.    "Override Criteria"

Defendants' proposed construction of "override criteria" is wrong because it ignores the ordinary meanings of non-technical words and improperly reads elements from the specification into the claims, even though the Patentees could have expressly done so had they chosen to.

### 1.    The Common Meaning Of "Criteria" Is Singular.

Defendants are technically correct: "criteria" is the plural form of the noun "criterion." (Defendants' Joint Mem. at 23).  However, the ordinary meaning of "criteria" for more than 50 years has been that it is singular.  (Ex. 12, *Merriam-Webster Online Dictionary.* 2010. Merriam-Webster Online. 28 February 2010 <http://www.merriam-webster.com/dictionary/criteria) ("The plural *criteria* has been used as a singular for over half a century").  This is how "criteria" was used by the Patentee and this is how it was understood by the USPTO.

First, the Patentee used "override criteria" as part of a Markush group, which is a listing of specified alternatives of a group in a patent claim.  *Abbott Labs. v. Baxter Pharm. Prods., Inc.*, 334 F.3d 1274, 1280 (Fed. Cir. 2003).  It is well known that "members of the Markush group are . . . alternatively usable for the purposes of the invention." *Id.* (citing *In re Driscoll*, 562 F.2d 1245, 1249 (CCPA, 1977)).   Thus, "members of the Markush group <u>are used singly</u>." *Id.* (quoting *Meeting Held to Promote Uniform Practice In Chemical Divisions*, 28 J. Pat. & Trademark Off. Soc'y 849, 852 (1946)) (emphasis added).

15

The element from claim 9 of the '404 patent that includes "override criteria" recites "establishing <u>override criteria</u> from a group consisting of . . ." (Ex. 3, '404 Patent, col. 17, ln. 33-36.) (emphasis added).  The format of the claim element is that of a Markush group; therefore each member of the "override criteria" is used singly, despite the fact that the word "criteria" could technically be considered plural.

It is also clear from the prosecution history of the '404 patent that the PTO considered "criteria" to be singular.  During prosecution, the Examiner initially rejected claim 9 (originally numbered as claim 26).  When doing so, the Examiner repeatedly referred to "override criteria" using the indefinite article "an":  "Claim 26 deals with <u>an override criteria</u> . . . such <u>an override criteria</u> . . ." (Ex. 13, June 25, 1998, Office Action Summary, Application No. 08/848,082, at page 6).

Defendants cite to an example in the specification of the '404 patent and claim it requires that "criteria" be construed in the plural form.  (Defendants' Joint Mem. at 24).  The example mentions "tax" and "rate" in the same paragraph but nothing more.  Defendants do nothing more to explain how reference to both "tax" and "rate" magically alters the ordinary meaning of "override criteria."

### 2. Defendants' Improperly Read Limitations Into The Term "Override."

Defendants argue that the term "override" recited in claim 9 of the '404 patent means to "alter the operation of the system."  (Defendants' Joint Mem. at 25).  This is improper because it improperly reads the "system," i.e., the wireless over-the-air communications system recited in the preamble of claim 9, into the term "override."  Stated another way, an "override criteria" is a criteria used to determine if something should be overridden.  There is no reason to read the "system" into the definition of "override" when the claim itself separately recites the system. Specifically, claim 9 recites:

A method of making communication process management decisions in <u>a wireless over-the-air communications system</u> . . .

B)  establishing <u>override criteria</u> from a group consisting of . . .

C)  directing the communication process to a specific service provider . . . <u>based on the override criteria</u> . . .

(Ex. 3, '404 Patent, col. 17, ln. 27-41) (emphasis added).

It is the "wireless over-the-air communications system" that directs the communication process to a specific service provider <u>based</u> on the override criteria.  Defendants' construction has the override criteria itself altering the operation of the wireless over-the-air communications system.  It is improper to import (i.e., "read in") limitations from the patent specification into the claims.  "The written description part of the specification itself does not delimit the right to exclude.  That is the function and purpose of claims."  *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 980 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996).

### 3.  Defendants Ignore The Language Of Claim 9 And Improperly Read "Exact Geographic Location" Into The Construction Of "Override Criteria."

Defendants argue that "override criteria" must be based on the exact geographic location.  (Defendants Joint Mem. at 25).  This construction, however, ignores the language of claim 9 and improperly reads "exact geographic location" into "override criteria."

First, the language of claim 9 clearly indicates that "override criteria" is established from "a group consisting of billing, taxing, CP . . ." and other items that do not include "exact geographic location."  (Ex. 3, '404 Patent, col. 17, ln. 33-36).  "Exact geographic location" is recited elsewhere as the first step of claim 9, which requires "establishing an exact geographic location for a mobile unit."  (*Id.* at col. 17, ln. 31-32).  Defendants' construction seeks to rewrite claim 9 to impose additional restrictions on "override criteria" not present in the claim.  However, courts are "powerless to rewrite the claims and must construe the language of the

17

claim[s] … based on the words used." *SRAM Corp. v. AD-II Eng'g, Inc.,* 465 F.3d 1351, 1359 (Fed Cir. 2006). *See also Merck & Co. v. Teva Pharms. USA, Inc.,* 395 F.3d 1364, 1372 (Fed. Cir. 2005). The language of claim 9 does not impose "exact geographic location" on the "override criteria" and neither should this Court.

Defendants' construction seeks to read "exact geographic location of the mobile unit" into "override criteria" to limit claim 9. It is improper to import (i.e. "read in") limitations from the patent specification into the claims. "The written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 980 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996).

Defendants also argue that the prosecution history of the '404 patent requires that "override criteria" be based on the exact geographic location. (Defendants' Joint Mem. at 25). In particular, Defendants cite to the Patentees' argument that they had "devised a call management system that makes call management decisions based on the exact geographic location of the mobile unit." (*Id.*) The Patentees then continued arguing that "[t]hese call management decisions include underlining determining billing rates, taxes, CP rating . . ." (Ex. 23, August 18, 1999, Amendment, at 12). While actually underlining determining billing rates and taxes, etc., are based on the exact geographic location of the mobile unit, the "override criteria" merely helps the invention direct the communication process to the correct service provider, as clearly set forth in claim 9. (Ex. 3, '404 Patent, col. 17, ln. 37-41) ("directing the communication process to a specific service provider associated with the service requested by the user of the mobile unit underlining based on the override criteria . . .") The proper service provider then underlining determines billing rates or handles taxes, etc.

18

Defendants' proposed construction of "override criteria" requires the Court to ignore the ordinary meanings of the words, improperly read multiple limitations into the phrase, and to misconstrue the prosecution history.

> **D.  A "Service Provider" Is Clear And Unambiguous, And Therefore Does Not Require Construction**

Defendants contend that a "service provider," as used in claim 9 of the '404 patent, must be limited to a "provider of wireless communications service (*i.e.*, a wireless carrier)."  This construction ignores the ordinary meaning of the words, ignores the context of claim 9, and ignores references in the specification that clearly illustrate a broader meaning.  A "service provider" is just what it says, a provider of a service.  No construction is necessary.

> **1.  Those Skilled In The Telecommunications Art Understand The Ordinary Meaning Of "Service Provider."**

Defendants argue that the ordinary meaning of "service provider" requires that it be the ordinary meaning in the proper context of the wireless communications industry, otherwise known as the telecommunications industry.  Plaintiffs agree with Defendants to the extent that not every definition from an ordinary dictionary for the words "service" and "provider" fit within the context of the '404 patent.  According to *Newton's Telecom Dictionary*, the leading telecommunications dictionary, a "service provider" is defined in the broadest sense as:

> "[A]ny company which provides service to anyone else.  That means a service provider could be a phone company in the form of either a LEC (Local Exchange Carrier) or IXC (IntereXchange Carrier).  It could be an ASP (Application Service Provider).  It could be an ISP (Internet Service Provider).  A service provider is thus any company which doesn't itself consume all of the service it sells.

(Ex. 24, Newton's Telecom Dictionary, 23rd Edition (2007), at 827)[6] (emphasis added).

_____

[6] Newton's Telecom Dictionary has been cited repeatedly by the Federal Circuit in patent cases.  *See, e.g., NCube Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1327 (Fed. Cir. 2006); *Paragon Solutions, LLC v. Timex Corp.*, 566 F.3d 1075, 1092 (Fed. Cir. 2009).

Although this definition is from a dictionary published in 2007, not 1991, its definition of "service provider" is consistent with the ordinary meaning of the words and, as will be shown below, consistent with the multiple uses of "service provider" in the specification of the '404 patent.

> **2.  The Term "Service Provider" Is Used In The Specification And Claims To Refer To Emergency Services, Thereby Establishing That "Service Provider" Is Not Limited To A Wireless Communications Service.**

Defendants claim that "[n]ot once is the unmodified term "service provider" used in the specification to clearly indicate anything other than a provider of wireless communications service." (Defendants' Joint Mem. at 22). This is simply incorrect. For example, the specification states:

> The system using the invention disclosed herein and in the incorporated material may use many levels of mapping such as cell site selection, taxing, billing, special rate plans, and mapping of E-911 calls to an appropriate <u>service provider</u>.

(Ex. 3, '404 Patent, col. 10, ln. 7-11) (emphasis added).

This is consistent with one of the objects of the invention set forth in the specification of the '404 patent, which is "to provide a wireless over-the-air communications system that can efficiently work with <u>emergency service providers</u>." (*Id.* at col. 8, ln. 25-27) (emphasis added).

The claims of the '404 patent further establish that "service provider" is not limited to a wireless communications service or a wireless carrier. Dependent claim 39 of the '404 patent expressly states that an emergency service provider is but one type of "service provider," as that term is used in the patent. Dependent claim 39 recites:

> 39.  The wireless over-the-air communications system defined in claim 28 wherein said <u>service provider</u> includes an emergency service provider.

(Ex. 3, '404 Patent, col. 22, ln. 1-3) (emphasis added).

20

While Defendants correctly point out that the specification of the '404 patent refers quite often to one type of service provider, i.e., wireless communications service, Defendants are dead wrong when they argue that the specification never clearly indicates that a "service provider" can be something other than a wireless communications service.   (Chandler Decl. ¶¶ 74-81).  The specification and claims of the '404 patent clearly refer to "service provider" in a broad, generic manner and then provide examples that include both emergency services and wireless communications services.

### E.    "A Specific Service Provider" Refers To The Service Requested By The User.

Defendants argue that "a specific service provider" in claim 9 of the '404 patent refers back to one of the "plurality of service providers" previously recited in the preamble of claim 9. (Defendants' Joint Mem. at 23).   Plaintiffs agree with Defendants on this narrow point. However, it is important to note that the claim language itself illustrates that "a specific service provider" is referring to a service requested by the user of the mobile unit.  Claim 9 recites:

> C)  directing the communication process to a <u>specific service provider</u> associated with the <u>service requested by the user of the mobile unit</u> based on the override criteria without further input from the user of the mobile unit.

(Ex. 3, '404 Patent, col. 17, ln. 37-41) (emphasis added).

The language of claim 9 clearly establishes that "a specific service provider" is not referring to a wireless carrier.  Users of cell phones do not request which wireless carrier they want to use when making a call.  On the other hand, users do request services, such as E-911 emergency services.

The context of claim 9 and other claims, the specification of the '404 patent, and the ordinary meaning in the telecommunications industry all support Plaintiffs' contention that the ordinary meaning of "service provider" is clear and unambiguous, and therefore does not require construction.

21

### F. "Location-Based Service"

| Term | Claims | Emsat and LBS | AT&T and T-Mobile | Google |
|------|--------|---------------|-------------------|--------|
| Location-based service | '763: 23, 32 | A service providing information *based*, at least in part, *on the location of the mobile unit.* | Wireless communications service provided *based on the location of the mobile unit.* | Call management decision for a wireless communication (including billing, taxing and/or routing) *based on the location of the mobile unit.* |

As shown in italics in the above comparison of the parties' proposed constructions for "location-based service," the parties agree that it is based on the location of the mobile unit. Plaintiffs propose that it is "based, <u>at least in part</u>, on the location of the mobile unit." Plaintiffs' qualification of "at least in part" is correct because there is nothing that requires a location-based service to be based entirely on location. Nor do Defendants offer any explanation for such a narrow construction. In fact, Defendants do not appear to object to Plaintiffs' qualification at all. (*See* Defendants' Joint Mem. at 34) ("<u>The parties agree</u> that, as used in the '763 Patent, a "location-based service" is either "based on" or "based, at least in part, on" the location of the mobile unit.") (emphasis added). Defendants implicitly agree that this portion of Plaintiffs' proposed construction is correct.

As noted by Defendants, the parties' primary dispute is over the scope of the claimed "service." (*Id.*) Defendants improperly narrow the claimed "service" to "wireless communications service," i.e., cellular telephone carrier. Defendant Google improperly narrows the claimed "service" even further arguing that it is limited to a "call management decision for a wireless communication (including billing, taxing and/or routing)." There is no reason to narrow the ordinary meaning of "service" except that it be "location-based," which all parties agree means that the service is "based, at least in part, on" the location of the mobile unit.

### 1. The Language Of Claim 23 Makes Defendants' Proposed Construction Redundant And Therefore Improper.

Defendants contend that a "location-based service" must be construed to be limited to a "wireless communications service." However, adopting such a construction would make large portions of claim 23 of the '763 patent superfluous, and thereby making such a construction improper. *Agilent Tech., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1378 (Fed. Cir. 2009) ("Otherwise, the word "closed" becomes superfluous."); *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."); *Mangosoft, Inc. v. Oracle Corp.*, 525 F.3d 1327, 1330-31 (Fed. Cir. 2008) (rejecting claim construction that "ascribes no meaning to the term . . . not already implicit in the rest of the claim.").

Claim 23 of the '763 patent makes specific reference to a wireless communications service. For example, claim 23 recites "obtaining a mobile unit identification number from a mobile unit <u>via a cellular communication system</u>" and "acquiring positional data corresponding to an exact geographic location for the mobile unit <u>via the cellular communication system</u>." (Ex. 5, '763 Patent, col. 18, ln. 40-41, 47-49) (emphasis added). If "location-based service" means "wireless communications service," which is what a cellular communication system provides, then every reference to "cellular communication system" would be superfluous, and improper. *Agilent Tech., Inc.*, 567 F.3d at 1378.

### 2. The Specification And Prosecution History Of The '763 Patent Support Plaintiffs' Construction Of "Location-Based Service."

Defendants selectively cite from the specification and prosecution history of the '763 patent to support their proposed construction, while completely ignoring the most relevant portions of each. Defendants correctly note that the Patentees added new claims to the application, which included the term "location-based service." The Patentees informed the

Examiner that newly added claim 23, which includes "location-based services," found support in the specification from "at least at paragraphs 6, 7, 51-53, 79, 80, 97 and Figures 1, 2, 6, 7, 8, 9, 9A, 9B".  (Ex. 25, May 16, 2007 Supplemental Preliminary Amendment, App. Ser. No. 10/993,477 (the '763 patent), at 9.)[7] (emphasis added).  Defendants cite to select portions of only three paragraphs from the specification and then argue that "service" always refers to "wireless communications service, including handoffs between cell sites during a call."  (Defendants' Joint Mem. at 36).

Defendants, however, completely ignore portions of paragraph 80 from the specification and, most noticeably, Figures 8 and 9B, which describe emergency services.  For example, a portion of paragraph 80 not cited by Defendants states:

> If a communication process is determined to be a 911 emergency call, then the system identifies the proper routing of the emergency communication process, blocks 407, 408 and 409, and the communication process will be directed to the proper emergency response system.

(Ex. 26, U.S. Patent Application Publication No. 2005/0075114, at ¶ 0080.) (emphasis added).

Figures 8 and 9B disclose a number of different "location-based services" including Emergency 911 service, as shown below:

---

[7] The Patentees were referring to the paragraph numbers of the version of the application published on April 7, 2005, as U.S. Patent Application Publication No. US 2005/0075114 A1.  A copy of that publication is attached as Ex. 26.



Fig. 8

Fig. 9B

The above referenced disclosure from the '763 patent is also found in the disclosure of the '633 patent.  The specification of the '633 patent states that "[t]he mobile locating features of the system [of the present inventions] could also be important in other contexts, <u>such as emergencies</u> or the like."  ('633 Patent, col. 6, ln. 54-56) (emphasis added).  Fig. 11A, shown below, discloses a service (e.g., 911 emergency call communication processing) that provides

25

information (e.g., location information) based at least in part on the location of the requesting mobile unit.



FIG. 11A

('633 Patent, Fig. 11A) (emphasis added)

There is nothing in the '763 or '633 patents that requires that "location-based service" be limited to a wireless communications service.  Consistent with the disclosure provided in the '633 and '763 patents, the prosecution history of the '763 patent fully supports Plaintiffs' construction.

When commenting on the Examiner's reasons for allowance of the '763 patent, the Applicant stated the following:

> A <u>location-based service</u> is a service that provides information based at least in part on the location of the requesting mobile unit.  Such a service is disclosed in the pending application (<u>see for example paragraphs 26, 27, 80, and figure 9B</u>, which describe an <u>emergency call service request being sent from the mobile unit to an emergency response system or law enforcement agency, along with the location of the mobile unit</u>).

(Ex. 14, September 21, 2007 Comments on Statement for Reasons for Allowance) (emphasis added).  The Patentees further directed the Examiner to paragraphs 26, 27, 80, and Fig. 9B of the specification.  Paragraph 80 and Fig. 9B have already been discussed, *supra*.  Paragraphs 26 and 27 address the "emergency response networks that use telephones, such as the E-911 systems" and location-based services for law enforcement agencies, further supporting Plaintiffs' construction of "location-based service."  (Ex. 26, U.S. Patent Application Publication No. US 2005/0075114 A1, at ¶¶ 0026, 0027.)

3.    **Google's Proposed Construction Is Unduly Narrow And Not Required By The Claims, The Specification, Or The Prosecution History**

Contrary to Google's unsupported rhetoric, the Patentees did not provide a narrow definition for "location-based service" at the time the application was amended.  Nor are Plaintiffs attempting to recapture claim scope by expanding the definition of "location-based service" in this litigation.  Plaintiffs' proposed construction for "location-based service" is essentially identical to what the Patentees argued to the Patent Office during prosecution, i.e., that "[a] location-based service is a service that provides information based at least in part on the location of the requesting mobile unit."  (Ex. 14, September 21, 2007 Comments on Statement for Reasons for Allowance.)

Google's claim that Plaintiffs' proposed construction "rearranges the words . . . without adding any clarity . . ." such that it "would result in the possibility that any activity on a mobile phone could be included" is equally unfounded.  Claims 23 and 32 of the '763 patent consist of far more than just the phrase "location-based service."  To come within the scope of these claims, each and every element must be met by the activity.

(a)    **The Specification Does Not Limit "Location-Based Service" To Only Call Management Decisions.**

Google begins by citing to the Abstract of the '763 patent to support its claim construction, arguing that the "abstract identifies precisely which decisions the invention makes based upon determination of an exact geographic location."  (Google's Mem. at 16).  While the Court is not prohibited from considering the Abstract, absent a clear expression of manifest exclusion, it should not be given much weight.  *Innova/Pure Water Inc. v. Safari Water Filt. Sys. Inc.*, 381 F.3d 1111, 1121 (Fed. Cir. 2004) ("[The Abstract] of a patent speaks generally to the invention and, much like the syllabus of an opinion, sets forth general information about the

document's content, which is described in more detail in the remainder of the document."); *see also* 37 C.F.R. § 1.72(b) ("The purpose of the abstract is to enable the United States Patent and Trademark Office and the public generally to determine quickly from a cursory inspection the nature and gist of the technical disclosure.")

Google continues by arguing that the specification of the '763 patent describes using exact geographic location to decide how to manage cell phone calls and improve routing, taxing, and billing of cell phone calls.  (Google's Mem. at 17).  All of these teachings are present in the '763 patent.  However, Google's claim that the specification depicts no other functions as an aspect of location-based services is wrong.  The specifications, drawings, and prosecution histories of the '763 and '633 patents all disclose emergency services, directly counter to Google's unduly narrow construction.  *See* Section G(1), *supra*.

### (b) The Prosecution History Does Not Limit "Location-Based Service" To Call Management Decisions.

Google went to great lengths to mischaracterize the prosecution of the '633 patent and that of the other patents in the same family.  Google begins with the '633 patent, which was filed in 1991.  (Google's Mem. at 5).  Google argues that because the Patentees stated that they had "invented a system that makes call management decisions using, as one factor, the exact geographic location of the mobile unit" that every claim of every related patent must be so limited.  (*Id.*)  In fact, Google then cites to the Examiner's *Reasons for Allowance*, and underlines "for handling calls associated with the mobile unit."  (*Id.*)  Google then concludes that it must have been "the *routing* of the call based on the exact geographic location of the cell phone that was key to the initial patentability of the claims."  (*Id.*)

Google's argument is incredibly misleading.  What the Examiner said was that the combination of all of the elements listed, not just what Google underlined, had not been found or

28

suggested with the cited prior art.  Therefore the combination was patentable.  Google is taking select quotes from the prosecution history that relate to <u>specific claims as written</u> and then generalizing them to apply to all of the claims across all of the patents-in-suit, which is misleading and improper.  *See Liebel-Flarsheim*, 358 F.3d at 906 (the claims of a patent "will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction'"); *Amgen, Inc.*, 314 F.3d at 1327 ("the prosecution history may not be used to infer the intentional narrowing of a claim absent the applicant's clear disavowal of claim coverage").

### G. The "Inaccuracy" Recited In Claim 1 Of The '763 Patent Is Not Limited To Distance.

Defendants argue that "an inaccuracy . . . that exceeds an interval" is limited to "a distance that is greater than an interval."  (Defendants' Joint Mem. at 32).  This construction, however, ignores the specification of the '763 patent and improperly narrows the scope of the claim.  Defendants have isolated one element from claim 1, which is more easily understood when read in its proper context:

> an updated system responsive to an inaccuracy in the geographic location associated with the mobile unit identification number that exceeds an interval defined by said updating system, and in response thereto . . .

(Ex. 5, '763 Patent, col. 17, ln. 10-16).

The "updating system" responds when the geographic location of the mobile unit identification number (and hence the mobile unit itself) changes: it does so by checking for a change when a certain interval is exceeded, such as length of time, distance traveled, etc.  However, there is nothing in claim 1 that limits the "interval" to "a distance that is greater than the interval."

Defendants' proposed construction is also at odds with the specification, which states that "the exact geographic location (EGL) is constantly updated, block 115 or alternately updated at various intervals, block 114a, *which intervals can be changed based on the time and/or distance traveled* by the mobile unit."  (Ex. 5, '763 Patent, col. 12, ln. 65 to col. 13, ln. 1) (emphasis added).  The specification further states that the "intervals at which the updating occurs *can be determined on a preset time, such as every minute, or can be determined according to distance traveled* by the mobile unit."  (*Id.* at col. 13, ln. 10-13) (emphasis added).  A person of ordinary skill in the art would recognize that the "interval" recited in claim 1 could be either time or distance, as is plainly reflected in the specification of the '763 patent.  (Chandler Decl. ¶ 82).

Furthermore, Defendants' proposed construction makes no sense when the claims that depend from claim 1 are considered because the doctrine of claim differentiation undermines their argument.  The doctrine of claim differentiation presumes that an independent claim will have a broader scope than the claims that depend from it,[8] since the dependent claims include all the elements in the independent claim they incorporate by reference plus the elements they expressly state.  *Boler Corp. v. Neway Anchorlok Int'l, Inc.*, 92 F. Supp. 2d 671, 675 (N.D. Ohio 2000); *Phillips*, 415 F.3d at 1324.  Accordingly, the broader claims cannot be construed to be limited by the additional structure described in the dependent claims.  *Boler*, 92 F. Supp. 2d at 675; *Phillips*, 415 F.3d at 1314-15.

Dependent claims 4 and 6 of the '763 patent both depend from claim 1 and are set forth below:

> 4.    The system of claim 1 wherein said interval requires updating at a preset time interval.

---

[8] "[A] claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed.  A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers."  35 U.S.C. § 112, ¶ 4.

> 6.    The system of claim 1 wherein said interval requires updating upon approach or movement across a geographic boundary.

(Ex. 5, '763 Patent, col. 17, ln. 27-28 and 33-35, respectively)

In dependent claim 4 the "interval" is based on time, i.e., "a preset time interval."  In dependent claim 6 the "interval" is based on distance, i.e., "approach or movement across a geographic boundary."  Under the doctrine of claim differentiation, the interval recited in claim 1 cannot be limited to "a distance that is greater than an interval," as Defendants contend, because distance is expressly recited in dependent claim 6, which is presumptively narrower than claim 1.

Defendants' proposed construction of the "inaccuracy" element of claim 1, which improperly narrows the scope of the claims, is clearly undermined by the specification of the '763 patent and doctrine of claim differentiation.

### H.    "In Response Thereto"

Contrary to Defendants' argument, Plaintiffs agree that "in response thereto" refers back to the claim language that precedes it, i.e., "an inaccuracy in the geographic location associated with the mobile unit identification number that exceeds an interval defined by said updating system."  All that the parties dispute is whether the Court should issue a claim construction, which it should not.

Defendants are correct when they argue that their "construction identifies the only element in Claim 1 to which a "response" could be made …" (Defendants' Brief, at 34).  As Defendants' construction is self-evident from the claim language itself, no construction is necessary.  *O2 Micro Int'l Ltd.*, 521 F.3d at 1362.  Because the ordinary meaning of the phrase "in response thereto," found in claim 1 of the '763 patent, is clear and unambiguous it does not require construction.

## I.     "Unique Mobile Identification Number"

All that the Patentees were concerned with was identifying a specific mobile unit.  Any "unique mobile identification number" would suffice as long as it was a number that identifies a unique mobile unit.  Accordingly, the phrase "a unique mobile identification number," found in claim 23 of the '763 patent, is not a term of art and does not require construction because its ordinary meaning is clear and unambiguous.  (Chandler Decl. ¶ 88).

Defendants contend that "mobile identification number" is a term of art.  Plaintiffs agree that a "Mobile Identification Number" or "MIN" is a term of art.  Furthermore, Plaintiffs agree that is MIN is defined as set forth by Defendants.  However, the '763 patent and the earliest filed '633 patent do not refer to or claim a MIN.

Instead, claim 23 and the specifications of the '763 and '633 patents refer to "a unique mobile identification number."  Had the Patentees intended to refer to a Mobile Identification Number, as a term of art, they would have identified it along with its acronym, i.e., "MIN."  In many cases the Patentees identified terms of art with the letters of the acronym capitalized.

The specification of the '763 and '633 patents are replete with examples of the Patentees using terms of art in this manner:  "Global Positioning System" or "GPS" ('763 patent, col. 9, ln. 25-26, '633 patent col. 3, l. 36); "Cellular Mobile Radio" or "CMR" ('763 patent, col. 1, l. 42, '633 patent, col. 1, l. 8); "Communication Device" or "CD" and a "Mobile Unit" or "MU" ('763 patent, col. 1, ln. 52-53); "mobile telecommunications switching office" or "MTSO" ('763 patent, col. 2, ln. 27-28, '633 patent, col. 1, ln. 44-45); "public switched telephone network" or "PTSN" ('763 patent, col. 3, l. 15, '633 patent, col. 1, l. 62).

The only reference to "a unique mobile identification number" in the specification of the '633 and '763 patents is as follows:

> FIGS. 2, 3, and 4 show a typical cellular telephone unit 2 having a
> unique mobile identification number stored in a suitable location
> such as an electrically erasable programmable read-only memory
> (not shown).  Telephone units of this kind are known to those
> skilled in this art, and thus will not be described in detail.

('633 Patent, col. 1, ln. 35-40) (emphasis added), *see also*, ('763 Patent, col. 2, ln. 18-23).

Had the Patentees been referring to a MIN, as a term of art, then the word "unique," which is used in the specifications and claim 23, would be superfluous.  According to Defendants, a MIN is "a 10-digit number that identifies a mobile unit …"  (Defendants' Brief, at 39) (emphasis added).  Any number that identifies a mobile unit, as opposed to other mobile units, must be a "unique" number.  Inclusion of "unique" further demonstrate that "unique mobile identification number" was not being used as a term of art, but instead, is simply a number that identifies a mobile unit.  Accordingly, the phrase does not require construction because its ordinary meaning is clear and unambiguous.

That "a unique mobile identification number" is not a term of art is also evidenced by other asserted claims in the '763 and related patents.  For example, claim 1 of the '763 patent recites "a data storage system for recording a geographic location associated with a mobile unit identification number," not a MIN.  ('763 Patent, col. 17, ln. 7-8) (emphasis added).  Claim 9 of the '763 patent recites "at least one of said cell sites receiving an identification of a specific mobile unit," not a MIN.  ('763 Patent, col. 17, ln. 47-48) (emphasis added).  Claim 9 also recites "forwarding said exact geographic location and specific mobile unit identification," not a MIN. ('763 Patent, col. 17, ln. 54-56) (emphasis added).  (*See also*, '822 Patent, col. 18, l. 21, col. 19, l. 8, col. 20, ln. 29-30).

## J.    The Order of Steps for Claim 1 of the '611 Patent

Contrary to Defendants' argument, the parties agree that Claim 1 of the '611 patent requires that (1) step E occurs after steps C and D, and (2) step F occurs after step E.  What the

parties disagree about is whether the Court should issue a claim construction, which will eventually become a charge to the jury.

Plaintiffs contend that the ordinary meaning of the claim elements, including the ordering of Steps E and F, are clear and unambiguous, and therefore do not require construction. Defendants appear to agree as they argue that "[a] simple reading of the claim shows that such an ordering is required."  (Defendants' Joint Brief, Doc # 114, at 17) (emphasis added).  Defendants also argue that "[i]t is self-evident that "*comparing*" (step E) must be performed before a call can be routed "based on *the comparison*" (step F)."  (*Id.* at 18) (emphasis added in underline, other emphasis in original).

When the parties raise an actual dispute regarding the proper scope of a claim, the Court, not the jury, must resolve that dispute.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).  In this case, there is no dispute.  Plaintiffs agree with Defendants' that step E precedes step F of claim 1 of the '611 patent.  However, as argued by Defendants, this construction is self-evident from the claim language itself and, thus no construction is necessary.  *Id.* at 1362.  ("district courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims."); *see also U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (claim construction "is not an obligatory exercise in redundancy").

Because the ordering of steps E and F in claim 1 of the '611 patent is self-evident from the claim language, the claimed steps are clear and unambiguous and do not require construction.

### K.    "Triangulation"

Defendants dispute whether the techniques used in LORAN would fall within the scope of the term "triangulation."  (Defendants' Joint Mem. at 41).  As recognized by both a person of

ordinary skill in the art and the Patent Office, LORAN clearly falls within the scope of "triangulation."

A person of ordinary skill in the art understands that LORAN is a type of triangulation. For example, the U.S. Coast Guard refers to LORAN signals as being a "form of triangulation."[9] Similar references to LORAN as being a form of triangulation appear in the prior art. U.S. Patent No. U.S. Patent No. 4,651,157 states that "[t]he method of tracking the vessel utilizes a LORAN-C transmitting network to provide the raw data used with *a known triangulation computation technique* for positively indicating the position of the vessel." (Ex. 27, U.S. Patent No. 4,651,157, col. 2, ln. 22-25.) (emphasis added). This patent further discloses that "... the receipt of the [Loran-C] signals by the vessel is used, through the *standard triangulation technique*, to determine the *exact latitude/longitude coordinates* of the vessel." (*Id.* at col. 2, ln. 38-40) (emphasis added).

A person of ordinary skill in the art would also understand from the specification of the '157 prior art patent that LORAN uses triangulation to determine a position in latitude and longitude. The description of the preferred embodiment of the invention discloses that "[the raw data received by the LORAN-C receiver] is in turn analyzed by the central station which performs *the standard triangulation technique to determine the exact position* of the vessel." (Ex. 27,  U.S. Patent No. 4,651,157, col. 5, ln. 50-53) (emphasis added).

It is also clear from the prosecution history of U.S. Patent No. 5,815,814 ("the '814 patent"), which claims priority from the '633 patent, that the Patent Office understood that LORAN is a type of triangulation. Specifically, the Examiner stated:

---

[9] *Coast Guard at War, Volume II*, Public Information Division, U.S. Coast Guard Headquarters, 1946, p 4.

> In support thereof, patent 5,235,633 teaches on column 3, lines 35-37, that the exact location of each mobile may be determined via GPS, <u>LORAN (which is a triangulation technique)</u>, or other position determining system.

(Ex. 28, June 24, 1994 Non-Final Office Action, App. Ser. No. 08/057,833 (the '814 patent), at 5) (emphasis added).

> Denison et al. teaches on column 3, lines 35-37, that <u>LORAN triangulation</u> may be used to establish the exact geographic location of a mobile unit.

(*Id.* at 6) (emphasis added).

Defendants also quarrel over the difference between their proposed construction of "determining the angles from the object to two points having known locations" and Plaintiffs' proposed construction of "by forming a triangle having the unknown point and two known points as the vertices."  (Defendants' Joint Mem. at 41.)  Both parties agree that there is an unknown point or an object whose location is to be determined.  Both parties agree that there are two known points or locations involved.  The dispute seems to be whether "triangulation" then requires "determining the angles" or "forming a triangle."

A person of ordinary skill in the art would understand that triangulation involves the use of triangles in calculating a location and that a LORAN position determining system uses triangulation to determine position.  (Chandler Decl. ¶ 95).  This is supported by the various dictionary definitions that define triangulation without reference to measuring angles.  For example:

> The location of an unknown point, <u>as in navigation</u>, by the <u>formation of a triangle</u> having the unknown point and two known points as the vertices.

(Triangulation. (n.d.). *The American Heritage® Dictionary of the English Language, Fourth Edition*. Retrieved April 02, 2010, from Dictionary.com website: http://dictionary.reference.com/browse/Triangulation) (emphasis added).

A person of ordinary skill in the art, i.e., a person of skill in cellular communications systems, would have a broad understanding that triangulation involves the use of triangles, and that LORAN is position determining system that uses triangulation.

## III.    CONCLUSION

For the foregoing reasons and authorities, Plaintiffs EMSAT and LBS respectfully request that their proposed claim constructions be adopted by this Court, and that the Court hold that each is entitled to the December 26, 1991 priority date of the '633 patent.


Respectfully submitted,


  /s/ R. Eric Gaum
Michael J. Garvin (0025394)
mjgarvin@hahnlaw.com
R. Eric Gaum (0066573)
regaum@hahnlaw.com
Robert J. Diaz (0077232)
rjdiaz@hahnlaw.com

HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio  44114-2301
Phone:  (216) 621-0150
Fax:  (216) 241-2824

Edward R. Nelson, III (*pro hac vice*)
enelson@nbclaw.net
Texas State Bar No. 00797142
Christie B. Lindsey (*pro hac vice*)
clindsey@nbclaw.net
Texas State Bar No. 24041918

NELSON BUMGARDNER CASTO, P.C.
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
Phone: (817) 377-9111
Fax:  (817) 377-3485

Attorneys for Plaintiffs Emsat Advanced Geo-
Location Technology, LLC and Location Based
Services LLC

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2010 a copy of PLAINTIFFS' RESPONSE TO ALL DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEFS was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/  R. Eric Gaum
One of the Attorneys for Plaintiffs
Emsat Advanced Geo-Location Technology,
LLC and Location Based Services LLC